**DEREK SMITH LAW GROUP, PLLC**
CATHERINE W. LOWRY, ESQUIRE
Attorney ID No. 316291
1628 Pine Street
Philadelphia, PA 19103
(267) 857-0832
catherine@dereksmithlaw.com
*Attorneys for Tomina Munson*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TOMINA MUNSON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>MAIN LINE REALTY CORPORATION,<br>MAIN LINE REALTY CORPORATION<br>d/b/a MAIN LINE HEALTH CENTER,<br>MAIN LINE REALTY CORPORATION<br>d/b/a THE BRYN MAWR HOSPITAL, and<br>COY BOYKIN<br><br>　　　　　　Defendants. | Civil Action No.<br><br>**PLAINTIFF DEMANDS**<br>**A TRIAL BY JURY** |

**COMPLAINT**

Plaintiff, Tomina Munson, by and through her attorneys, Derek Smith Law Group, PLLC, by way of this Complaint, state:

**NATURE OF THE ACTION**

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")) and the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et seq. ("PHRA").

2. Plaintiff seeks damages to redress the injuries she suffered as a result of the Defendants' actions.

## PARTIES

3. Plaintiff Tomina Munson (hereinafter referred to as "Plaintiff") is an individual resident of the County of Philadelphia within the Eastern District of Pennsylvania.

4. At all times material, Defendant Main Line Realty Corporation (hereinafter referred to as "Defendant MLR") was and still is a domestic nonprofit corporation incorporated in the Commonwealth of Pennsylvania whose registered office address is 130 S. Bryn Mawr Ave, Bryn Mawr, Pennsylvania 19010.

5. At all times material, Defendant MLR was doing business as Main Line Health Center and as The Bryn Mawr Hospital (hereinafter "Defendant BMH") both of whose registered offices have an address of 130 S. Bryn Mawr Ave, Bryn Mawr, Pennsylvania 19010.

6. Defendant Coy Boykin (hereinafter referred to as "Defendant Boykin") was and, upon information and belief, still is a Manager at Defendant BMH.

7. At all times material, Defendant Boykin held supervisory authority over Plaintiff.

8. At all times material, Defendants were the joint employers of Plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Around December 20, 2023, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") alleging violations of Title VII and the PHRA.

10. Around January 19, 2024, Plaintiff received a letter from the PHRC indicating that her matter was transferred from the EEOC to the PHRC for investigation.

11. Around July 9, 2025, Plaintiff received a letter from the PHRC which indicated they were closing the case.

12. Around August 22, 2025, the EEOC issued Plaintiff a "Notice of Right to Sue."

13. This action is being commenced within ninety (90) days of Plaintiff's receiving the Notice of Right to Sue.

14. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

15. Plaintiff's PHRA claims are ripe because more than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because it involves questions under federal law under Title VII and the PHRA.

17. This Court has supplemental jurisdiction under 28 U.S.C. §1367.

18. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

19. Venue in this judicial district is proper pursuant to 28 U.S.C §1391(b) and 42 U.S.C. §2000e-5(f)(3) because a substantial part of the acts or omissions giving rise to Plaintiff's claims

occurred in Montgomery County Pennsylvania within the Eastern District of Pennsylvania, and Defendants are subjected to personal jurisdiction here.

## MATERIAL FACTS

20. Around September 20, 2023, Plaintiff began working at Aramark.

21. At all times material, consistent with her Muslim religious beliefs, Plaintiff wore a Shayla.

22. A Shayla is a head covering worn by some Muslim women, including Plaintiff, in the presence of males outside their immediate family, due to their religious beliefs.

23. Shortly thereafter, Plaintiff was assigned to work at Defendant BMH, which is owned and operated by Defendant MLR.

24. Plaintiff worked in Defendant BMH's Environmental Services department.

25. More specifically, Plaintiff was responsible for cleaning hospital rooms and nurses' stations.

26. Around October 31, 2023, Plaintiff was cleaning the floor within Defendant BMH that she was assigned to for that shift.

27. Around 8 AM that day, Plaintiff overheard numerous nurses discussing her Shayla in a negative manner.

28. None of the nurses addressed Plaintiff.

29. Rather, they continued to discuss Plaintiff's religious head garment stating, "we don't wear that up here."

30. Shortly thereafter, one of the nurses passed Plaintiff and stated, "oh that's new," when looking in Plaintiff's direction.

31. Upon information and belief, the nurse made this comment about Plaintiff as there were no other Muslims who wore head garments, including but not limited to a Shayla.

4

32. Despite being distraught and emotionally upset by what had transpired, Plaintiff attempted to continue with her day and clean the floor she was assigned to and responsible for that shift.

33. Later that day, one of the nurses, Alicia Casey (hereinafter "Ms. Casey") who had been discussing Plaintiff's Shayla earlier that day, approached Plaintiff and informed her that there was a pile of dust that was behind the Nurses' Station desk.

34. Plaintiff apologized, as she had forgotten to sweep up the pile earlier that day as a result of being emotionally distraught by the negative, discriminatory comments she overheard the nurses making about her Shayla.

35. Plaintiff immediately went and cleaned up the pile.

36. This was the extent of the exchange between Plaintiff and Ms. Casey regarding that issue and the only interaction that Plaintiff ever had directly with Ms. Casey.

37. Around 2 PM on that same day, Defendant Boykin approached Plaintiff in a frantic state and informed her that he "needed [Plaintiff] to come downstairs with [him] right [then]!"

38. Defendant Boykin's demeanor and words caused Plaintiff concern as she was unaware of anything that had happened that would cause him to act in such a manner.

39. Once downstairs, Defendant Boykin informed Plaintiff that Ms. Casey had informed him that she didn't "want [Plaintiff] up there," meaning on the floor that Ms. Casey worked on.

40. Defendant Boykin further informed Plaintiff that Ms. Casey claimed that Plaintiff had argued with her, Ms. Casey, about cleaning up the dust pile.

41. Plaintiff informed Defendant Boykin that this was untrue and that he should review Defendant BMH's video surveillance as it would show that the interaction was brief and there was no argument.

42. Defendant Boykin instructed Plaintiff that she was to leave for the day, as Ms. Casey did not want Plaintiff working on the same floor, and asked Plaintiff if she could "work with her hair up" and "without all the extra" and made a hand motion towards his head area.

43. Upon information and belief, Defendant Boykin was asking if Plaintiff could work without her Shayla.

44. Plaintiff informed Defendant Boykin that she could not work without her head garment as wearing it was part of her religious beliefs and practices.

45. Defendant Boykin again instructed Plaintiff to leave for the day and informed her that he would be in touch.

46. On November 1, 2023, Plaintiff, as she had not heard from Defendant Boykin, called Defendant BMH and Defendant Boykin answered the phone.

47. When Plaintiff inquired about the status of her employment, Defendant Boykin informed her that they "no longer needed [her] services."

48. Defendant Boykin provided Plaintiff with no additional information about why her services were no longer needed.

49. Upon information and belief, Plaintiff was terminated due to her religious beliefs, including but not limited to her decision to wear a Shayla consistent with those beliefs.

50. Defendants' discriminatory, derogatory, and unlawful comments caused Plaintiff to feel extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

51. Plaintiff claims that Defendants unlawfully discriminated against, and terminated, Plaintiff due to religion and/or ethnicity.

52. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will suffer the loss of income, bonuses, benefits and other compensation which such employment

entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

53. As a result of Defendants' conduct, Plaintiff sustained serious and permanent personal injuries.

54. Plaintiff further claims aggravation, activation and/or exacerbation of any preexisting condition.

55. Plaintiff claims that Defendants unlawfully retaliated against and terminated Plaintiff due to her opposition to the unlawful conduct of Defendants.

56. The above are just some of the discrimination to which Defendants subjected Plaintiff.

57. Defendants have exhibited a pattern and practice of discrimination.

58. Plaintiff claims alternatively that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, Plaintiff claims that Defendants owed and breached its duty to Plaintiff to prevent the harassment and discrimination, and is therefore liable for negligence.

59. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**DISCRIMINATION**
**UNDER TITLE VII**
**(against Defendants MLR and BMH)**

55. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

56. This claim is instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's religion and/or ethnicity.

57. SEC. 2000e-2. [Section 703] states as follows:

    (a) Employer practices

    It shall be an unlawful employment practice for an employer –

    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

58. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her religion and ethnicity.

59. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure

to promote, reassignment with significantly different job responsibilities, and decisions causing significant changes in her employment benefits.

60. Plaintiff's protected characteristics (religion and ethnicity) played a determinative factor in Defendants' decisions.

61. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

62. Alternatively, Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

63. Defendants acted with the intent to discriminate.

64. Defendants acted upon a continuing course of conduct.

65. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT II
## HOSTILE WORK ENVIRONMENT
## UNDER TITLE VII
## (against Defendants MLR and BMH)

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the Plaintiff's protected characteristics that have the

purpose or effect of unreasonably interfering with the terms and conditions of the Plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

68. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

69. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

70. Here, Defendants' conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected classes believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

71. The discriminatory conduct directly refers to Plaintiff's religion and ethnicity.

72. Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority and terminated Plaintiff due to her religion and/or ethnicity and/or because of Plaintiff's coworkers' issues with the same.

73. Derogatory and discriminatory conduct and comments filled the environment of Plaintiff's work area.

74. Defendants knew that the derogatory and discriminatory conduct and comments filled Plaintiff's work environment.

75. The derogatory and discriminatory comments and conduct caused Plaintiff to sustain emotional distress.

76. Plaintiff subjectively regarded the derogatory and discriminatory comments and conduct as unwelcome, unwanted and she objectively opposed the conduct.

77. The conduct was emotionally damaging and humiliating.

78. The conduct unreasonably interfered with Plaintiff's work performance.

79. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

80. As a result of the Defendants' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT III
## DISCRIMINATION
## PHRA § 955
### (against Defendants MLR and BMH)

81. Plaintiff hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

82. The PHRA § 955 provides that it shall be an unlawful discriminatory practice:

> "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent

contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

83. Defendants engaged in unlawful employment practices prohibited by the PHRA by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions, training and privileges of employment because of her religion and ethnicity.

84. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing significant changes in her employment benefits.

85. Plaintiff's protected characteristics (religion and ethnicity) played a determinative factor in Defendants' decisions.

86. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

87. Alternatively, Plaintiff's protected status played a motivating part in the Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

88. Defendants acted with the intent to discriminate.

89. Defendants acted upon a continuing course of conduct.

90. As a result of the Defendants' violations of the PHRA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress,

reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT IV
## AIDING AND ABETTING
## PHRA § 955
## (against Defendant Boykin)

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. PHRA § 955(e) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act or any order issued thereunder, or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice."

93. Defendant Boykin engaged in an unlawful discriminatory practice in violation of PHRA § 955(e) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

94. As a result of the Defendants' violations of the PHRA, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

### DEMAND TO PRESERVE EVIDENCE

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her claims alleged herein, her claims to

damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

*Attorneys for Plaintiff*

By: */s/ Catherine W. Lowry, Esq.*
Catherine W. Lowry, Esq.
1628 Pine Street
Philadelphia, Pennsylvania 19103
catherine@dereksmithlaw.com

Dated: November 19, 2025